UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Robin S. Cahill,

     Plaintiff,

     v.                                    Civil Action No. 1:11-CV-148

Michael J. Astrue,
Commissioner of Social Security,

     Defendant.


## OPINION AND ORDER
(Docs. 11, 16)

Plaintiff Robin Cahill brings this action pursuant to 42 U.S.C. § 405(g) of the

Social Security Act, requesting review and reversal of the decision of the Commissioner

of Social Security ("Commissioner") denying her application for disability insurance

benefits.  Pending before the Court are Plaintiff's Motion to reverse the Commissioner's

decision (Doc. 11), and the Commissioner's Motion to affirm (Doc. 16).  For the reasons

stated below, the Court DENIES Cahill's motion and GRANTS the Commissioner's

motion.

## Background

Cahill was forty-seven years old on the alleged disability onset date of

March 15, 2009.  (AR 30, 153.)  Cahill completed high school and has taken at least one

additional computer course.  (AR 29.)  She has been employed in a number of positions,

including caregiver, cabinet maker, cashier, newspaper carrier, and milker. (AR 29, 206.) Cahill stopped working due to chronic back pain, as well as pain in her right shoulder, neck, and knees. (AR 30.)

In July 2009, Cahill filed applications for social security income and disability insurance benefits. (AR 151, 153.) During the administrative hearing, Cahill stated that she aggravated her right shoulder while working as a caregiver when a patient fell and pulled on her arm. (AR 32.) Cahill also explained that she left that job in March 2009 when she was found guilty by the Board of Nursing of abuse and neglect after she had a disagreement with a patient and left work early. (AR 33, 410.) Cahill's disability application was denied initially and on reconsideration. (AR 75-99.)

On January 21, 2011, Administrative Law Judge Thomas Merrill ("the ALJ") conducted a hearing on Cahill's application. (AR 25-55.) Cahill, who was represented by counsel, appeared and testified at the hearing. (AR 27.) On February 3, 2011, the ALJ issued a decision finding Cahill not disabled under the Social Security Act. (AR 18.) Thereafter, the Decision Review Board selected the ALJ's decision for review, but did not do so during the time allowed. (AR 1.) As a result, the ALJ's decision became final. (*Id.*) Having exhausted her administrative remedies, Cahill commenced this lawsuit on June 14, 2011. (*See* Doc. 4.)

## ALJ Determination

The Commissioner uses a five-step sequential process to evaluate disability claims. *See Butts v. Barnhart*, 388 F.3d 377, 380-81 (2d Cir. 2004). The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial

gainful activity" ("SGA"). 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not

so engaged, step two requires the ALJ to determine whether the claimant has a "severe

impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant

has a severe impairment, the third step requires the ALJ to make a determination as to

whether the claimant's impairment "meets or equals" an impairment listed in 20 C.F.R.

Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is

presumptively disabled if the impairment meets or equals a listed impairment. *Ferraris*

*v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the fourth step requires the ALJ to

consider whether the claimant's residual functional capacity ("RFC") precludes the

performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The

fifth and final step commands that the ALJ determine whether the claimant can do "any

other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of

proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five,

there is a "limited burden shift to the Commissioner" to "show that there is work in the

national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d

Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited,

and the Commissioner "need not provide additional evidence of the claimant's [RFC]").

Employing this sequential analysis, the ALJ first determined that Cahill had not

engaged in substantial gainful activity since March 15, 2009, her alleged onset date. (AR

12.) Next, the ALJ found that Cahill had the severe impairments of degenerative disc

disease, right shoulder bursitis, depression, and status post right knee surgery. (*Id.*) At

3

step three, however, the ALJ found that Cahill did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (AR 13.) The ALJ then determined that Cahill had the RFC to perform "light work," as defined in 20 C.F.R. § 416.967(b),[1] "allowing for occasional pushing, pulling, and overhead reaching with the right upper extremity; simple and routine three-step tasks performed for periods up to two hours at a time; and occasional supervised interaction with others." (AR 14.) Finally, the ALJ determined that Cahill could perform her past relevant work as a cashier and newspaper delivery person. (AR 17.) The ALJ proceeded to step five and alternatively determined, based on the testimony of a vocational expert ("VE"), that other jobs existed in significant numbers in the national economy that Cahill could perform. (AR 17-18.) Thus, the ALJ concluded that Cahill had not been under a disability since the alleged onset date of March 15, 2009. (AR 18.)

## **Standard of Review**

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §

---

[1] Pursuant to the regulations, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b). The regulations further provide:

> Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

*Id.*

423(d)(1)(A).  A person will be found disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

In reviewing a Commissioner's disability decision, the court limits its inquiry to a "review [of] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard."  *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g).  A court's factual review of the Commissioner's decision is restricted to determining whether "substantial evidence" exists in the record to support such decision.  42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Poupore*, 566 F.3d at 305.

Although the reviewing court's role in reviewing the Commissioner's disability decision is "quite limited[,] and substantial deference is to be afforded [that] decision," *Hernandez v. Barnhart*, No. 05-9586, 2007 WL 2710388, at *7 (S.D.N.Y. Sept. 18, 2007) (internal quotation marks omitted), the Social Security Act "must be construed liberally because it is a remedial statute that is intended to include, rather than exclude, potential recipients of benefits," *Jones v. Apfel*, 66 F. Supp. 2d 518, 522 (S.D.N.Y. 1999);

*Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981) ("In its deliberations the District Court should consider the fact that the Social Security Act is a remedial statute to be broadly construed and liberally applied.").

<u>Analysis</u>

**I.      The ALJ's Consideration of Record Evidence**

Cahill claims that the ALJ committed reversible error when he mischaracterized facts relevant to her medical condition and activities. (Doc. 11 at 17.) Specifically, she contends that the record evidence demonstrates that she participated in treatment for her impairments and could only perform minimal activities of daily living. (*Id.* at 18.) These claims are unavailing.

**A.      Compliance with Medical Treatment Recommendations**

In making his step two determination as to impairment severity, the ALJ stated that Cahill "decline[d] injections and physical therapy" after her right-sided shoulder bursitis improved in October 2008. (AR 13.) This statement is factually accurate, as the examination notes of treating physician Dr. Melanie Lawrence provides that "[p]atient decline[d] injection and physical therapy at this point" despite some continued discomfort. (AR 330.) The ALJ's factual finding, therefore, was supported by substantial evidence.

Cahill argues that the ALJ's statement oversimplifies the treatment that she did undergo. (Doc. 11 at 17.) Cahill also suggests that the ALJ impermissibly denied her disability benefits because of her alleged non-compliance with medical recommendations. (*See id.*) The Commissioner's regulation states, "[i]n order to get

6

benefits, [a claimant] must follow treatment prescribed by [her] physician if this treatment can restore your ability to work." 20 C.F.R. § 416.930. There is, however, no reason to believe that the ALJ denied Cahill benefits based on her refusal of treatment in this one instance. The record evidence shows that Cahill participated in physical therapy for her shoulder bursitis from October to December 2008. (AR 304-13.) Additionally, Cahill received prednisone and a steroid injection. (AR 319, 330.) In his decision, the ALJ acknowledged that Cahill "suffers from a host of musculoskeletal problems" and that "[p]rior treatment . . . included medications, physical therapy, chiropractic care, and exercise." (AR 12.) Thus, contrary to Cahill's assertion, the ALJ considered these various treatments in his decision.

Furthermore, the ALJ observed that Cahill declined this treatment at step two of the sequential analysis. (*See* AR 13.) Despite this fact, the ALJ determined that Cahill suffered from the severe impairments of degenerative disc disease and right shoulder bursitis. (AR 12.) This finding, therefore, did not negatively affect Cahill's disability claim in any way. Rather, the ALJ's statement appears to have been an accurate recitation of one discreet fact at an early step of the analysis. Thus, the ALJ did not err in his consideration of this evidence.

## B. Activities of Daily Living

Cahill contends that "[t]he ALJ overstated and omitted important information about [her] activities of daily living." (Doc. 11 at 18.) At step three, the ALJ concluded that Cahill had no restriction in activities of daily living. (AR 14.) The ALJ noted that "[t]he record establishes that the claimant is able to perform activities of daily living such

as cooking, shopping, and household chores; she is able to drive and use a computer."
(*Id.*)  The ALJ also considered Cahill's activities of daily living when making his
credibility determination.  He noted Cahill's ability to "cook simple meals, do light
chores, shop, read, use a computer, and play computer games," and that she "spends most
of her day sitting and watching television or movies."  (AR 15.)  Cahill maintains that
this summary overstates her abilities and omits "important information" about her
activities of daily living.  (Doc. 11 at 18.)

In her Function Report, Cahill reported that she was able to dust, vacuum, do
laundry, use the dishwasher, and mop the floors for short intervals.  (AR 200.)  She also
stated that she fed and cleaned the litter box of her cat.  (AR 199.)  Cahill reported that
she prepared "quick, easy" meals for fifteen minutes at a time, possessed the ability to
grocery shop every week, and watched movies and television for a total of five hours a
day.  (AR 200-02.)  At the administrative hearing, Cahill confirmed her ability to perform
household chores, albeit at a slow pace, and grocery shop.  (AR 31, 43.)  In addition, she
testified that she used a computer to browse the internet and play simple video games.
(AR 46.)

Upon consideration of this record evidence, it is clear that the ALJ accurately
summarized Cahill's activities of daily living.  In particular, the ALJ acknowledged
Cahill's limitations in cooking meals and performing household chores by characterizing
these activities as "simple" and "light" respectively.  (AR 15.)  Thus, the ALJ's factual
conclusions regarding Cahill's activities of daily living are supported by substantial
evidence.

## II.     The ALJ's Credibility Determination

Cahill claims that the ALJ failed to properly evaluate her credibility.  (Doc. 11 at 19.)  It is the province of the Commissioner, not the reviewing court, to "appraise the credibility of witnesses, including the claimant."  *Aponte v. Sec'y of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) (internal quotation marks omitted).  If the Commissioner's findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain.  *Id.* (citing *McLaughlin v. Sec'y of HEW*, 612 F.2d 701, 704 (2d Cir. 1982)).  "When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements."  SSR 96-7p, 1996 WL 374186, at *4 (July 2, 1996).  An important indicator of the credibility of a claimant's statements is their consistency with other information in the record, including the claimant's medical treatment history.  *Id.* at *5-6.

In this case, the ALJ found that Cahill "does suffer from pain associated with underlying disc and joint degeneration" and that these "medically determinable impairments could reasonably be expected to cause the alleged symptoms."  (AR 15.)  Nevertheless, the ALJ concluded that Cahill's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with" the RFC of light work allowing for occasional pushing, pulling, and overhead reaching with the right upper extremity.  (*Id.*)  The ALJ summarized aspects of Cahill's testimony pertaining to the intensity of her pain, specifically Cahill's testimony that her pain "intensifies with overhead reaching; looking down to read; looking at a

computer screen; bending and twisting; lifting more than five pounds; sitting more than 15 minutes; standing more than five minutes; and walking more than 1/2 a mile." (*Id.*) The ALJ also acknowledged Cahill's purported inability "to grip items such as pens, eating utensils, and cups." (*Id.*) The ALJ noted that despite this testimony, Cahill indicated that she "does some light household chores, cooking, driving, shopping, and visiting, she spends most of her day sitting and watching television or movies." (*Id.*) The ALJ explained that the "records show[] the claimant was functioning reasonably well" and "can effectively perform activities of daily living." (*Id.*) As previously discussed, these summaries accurately characterize the record evidence regarding Cahill's activities of daily living. (*See* AR 31, 43, 46, 200-02.)

The ALJ considered the objective medical evidence, but found that it "falls short of demonstrating the existence of pain and limitations that are so severe that the claimant cannot perform any work on a regular and continuing basis." (AR 15-16.) The ALJ accurately discussed "unremarkable" studies of Cahill's spine, "normal" studies of her right shoulder, and her continued improvement with treatment. (AR 16, 296, 305, 330, 350, 478-79, 501.) The medical records show that Cahill's lumbar spine and left hip were "within the range of normal." (AR 476.) Similarly, Cahill's lumbosacral spine had "no acute abnormality" and her right shoulder had "[n]o definite acute abnormality." (AR 477-78.) Finally, there was "[n]o evidence of acute fracture or subluxation" of her cervical spine. (AR 479.)

The ALJ also discussed his observations during the administrative hearing. He recalled that Cahill "was very active in and out of her seat and 'stretching the back

muscles'" and "demonstrated full range of motion of her arms, legs, hips, back and neck." The law is clear that the ALJ may consider such observations in combination with the objective medical evidence and Cahill's purported activities of daily living for the purposes of a credibility determination. *See* SSR 96-7p, 1996 WL 374186, at *5 (1996); *Schall v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998). The ALJ's decision to do so, therefore, did not constitute error.

Cahill also claims that the ALJ failed to properly evaluate her subjective evidence of depression. Despite raising this claim, Cahill does not advance an argument to support this claim in her brief.

For these reasons, the ALJ's credibility determination was supported by substantial evidence and was not contrary to law.

## III. Medical Opinions

### A. Treating Physician Opinion

Cahill claims that the ALJ committed reversible error when he decided not to give controlling weight to the opinion of her treating physician, Dr. Melanie Lawrence. Specifically, Cahill contends that the ALJ improperly failed to examine the relevant factors when considering the opinions of Dr. Lawrence. This claim is unfounded.

"With respect to the nature and severity of [a claimant's] impairment(s) . . . [t]he [Social Security Administration] recognizes a treating physician rule of deference to the views of the physician who has engaged in the primary treatment of the claimant." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (citations and internal quotation marks omitted); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Courts have acknowledged,

however, that despite this "special respect . . . [these opinions] need not be given controlling weight where they are contradicted by other substantial evidence in the record." *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (citations omitted). It is well settled that the conflicting opinions of other medical experts, including consultative physicians, "may constitute such [substantial] evidence." *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983); *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

Cahill maintains that the ALJ failed to properly consider factors relevant to the weight of Dr. Lawrence's opinion. (Doc. 11 at 22.) If "[a]n ALJ . . . refuses to accord controlling weight to the medical opinion of a treating physician," then she "must consider various 'factors' to determine how much weight to give to the opinion." *Halloran*, 362 F.3d at 32. These factors include (1) "the frequency of examination and the length, nature and extent of the treatment relationship"; (2) "the evidence in support of the treating physician's opinion"; (3) "the consistency of the opinion with the record as a whole"; (4) "whether the opinion is from a specialist"; and (5) "other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion." *Id.* (citing 20 C.F.R. § 404.1527(d)(2)).

In his decision, the ALJ considered the opinion evidence of treating physician Dr. Lawrence within this framework. The ALJ first discussed the extent of the treatment relationship, acknowledging that Dr. Lawrence had been Cahill's treating physician since 2005. (AR 13.) The ALJ next examined the record evidence and concluded that Dr. Lawrence failed to support her opinions as to Cahill's physical and mental limitations with objective findings. (AR 16.) The ALJ also determined that certain aspects of Dr.

Lawrence's reports were contradictory. (*Id.*) The ALJ, therefore, afforded the opinions of Dr. Lawrence "limited weight." (*Id.*)

In November 2010, Dr. Lawrence opined that Cahill could occasionally lift or carry up to twenty pounds and provided some sitting, standing, and walking limitations. (AR 504-05.) A majority of these recommendations were boxes checked on a form. *See Halloran*, 362 F.3d at 31 n.2 (providing that a "standardized form . . . is only marginally useful for purposes of creating a meaningful and reviewable factual record" if unexplained). Despite the form containing additional space for a doctor to "support [their] assessment" with clinical or medical findings, Dr. Lawrence merely wrote that Cahill reported the pain. (AR 507.) Dr. Lawrence explained that she "ha[d] not done any imaging studies on [Cahill] since she had previously gotten her ortho care elsewhere." (AR 552.) Rather, Dr. Lawrence's comments were "based on patient reports, historical notes and not based on physical exam or imaging." (*Id.*) Similarly, on a mental functional capacity form, Dr. Lawrence provided that her assessment was supported by "patient reports," and "frequent job changes as well as [Cahill's] observed moderately poor memory in sessions." (AR 510.) It is clear, therefore, that Dr. Lawrence's opinions as to both Cahill's physical and mental functionality were not supported by objective medical evidence. *See* SSR 06-03P, 2006 WL 2329939, at *4 (2006) (providing that an ALJ may consider "[t]he degree to which the source presents relevant evidence to support an opinion").

Additionally, certain aspects of Dr. Lawrence's notes and opinions are internally inconsistent. For example, in a mental functional assessment dated November 22, 2010,

the Doctor indicated that Cahill had an "extreme" impairment as to her ability to make judgments on simple work-related decisions, yet merely possessed a "marked" limitation pertaining to ability to understand and remember complex instructions. (AR 510.) Furthermore, during a physical exam on that same day, Dr. Lawrence noted that Cahill's recent and remote memory was normal. (AR 552.) Nevertheless, Dr. Lawrence contradictorily provided on her functional assessment that same day that "[p]oor memory [was] observed." (AR 509.) It was proper for the ALJ to consider this evidence in making his determination. 20 C.F.R. § 404.1527(c)(4) (providing that "[g]enerally, the more consistent an opinion is with the record as a whole, the more weight [the Commissioner] will give to that opinion").

Dr. Lawrence's opinions also conflict with other medical opinions contained in the record, as discussed below. Accordingly, the ALJ properly considered the relevant factors when assigning weight to Dr. Lawrence's treating physician opinion, and did not err in the weight assigned thereto.

### B.      Opinions of Non-Examining Consultants

Cahill also contends that the ALJ's decision to afford the opinions of non-examining consultants controlling weight was improper and not supported by substantial evidence. (Doc. 11 at 22.) For the following reasons, this claim fails.

In his decision, the ALJ accorded substantial weight to the opinions of non-examining consultant Drs. William Farrell and Leslie Abramson because those opinions were "consistent with the medical evidence as a whole." (AR 13.) In many cases, a state agency consultant's opinion properly contributes to the substantial evidence in support of

an ALJ's RFC determination.  *See Santos-Sanchez v. Astrue*, 723 F. Supp. 2d 630, 638 (S.D.N.Y. 2010) (finding no error in ALJ's reliance upon state agency consultant's opinion).  This applies when, as in this case, a consultant's report is consistent with the other medical evidence.  *See Babcock v. Barnhart*, 412 F. Supp. 2d 274, 280 (W.D.N.Y. 2006) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims.  As such their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (Internal quotation marks omitted).

In February 2010, Dr. Farrell opined that Cahill's ability to understand and remember detailed instructions was moderately limited, that her ability to carry out detailed instructions was moderately limited, that her ability to interact appropriately with the general public was markedly limited, and that her ability to maintain socially appropriate behavior was moderately limited.  (AR 417-18.)  Dr. Farrell explained that despite Cahill's purported inability to follow instructions, she received a perfect score on her Mini-Mental Status Examination, indicating a lack of cognitive impairment.  (AR 365, 419.)  Dr. Farrell also cited screening that revealed no memory impairments.  (*Id.*)

The record shows that examining psychologist Dr. Theodore Williams observed that "Cahill did not experience difficulty focusing, attending, or concentrating.  She also did not appear confused or present with comprehension deficits."  (AR 365.)  Dr. Williams also stated that Cahill's "immediate, mid-range and long term memory abilities were intact.  Moreover, the organization and presentation of her thoughts was clear,

rationally based and well organized."[2]  (*Id.*)  Additionally, psychiatric nurse practitioner Wendy Berman provided that Cahill's "thought process and content [was] logical and coherent."  (AR 413.)  Dr. Farrell's mental functional capacity assessment, therefore, was consistent with other record evidence.

The ALJ also afforded substantial weight to the opinion of non-examining physician Dr. Leslie Abramson.  (AR 13.)  Citing the objective medical evidence, Dr. Abramson opined that Cahill could stand and/or walk for about 6 hours in an 8-hour workday and could sit for about 6 hours in an 8-hour workday.  (AR 436.)  Dr. Abramson also provided that Cahill could occasionally lift and/or carry 20 pounds and could frequently lift and/or carry 10 pounds.  (*Id.*)  Dr. Abramson concluded that Cahill's "[a]llegations [were] only partially credible in that there [were] minimal findings on x-ray as well as exam to support any further reduction in her RFC.  [Cahill] [] indicate[d] that she cleans, shops, attends church frequently, drives, socializes, etc."  (AR 440.)  As previously discussed, Dr. Abramson accurately summarized the objective medical evidence and Cahill's activities of daily living.  Furthermore, in September 2009, Dr. Teresa Fama observed that Cahill's "widespread pain" was "out-of-proportion to her physical exam."  (AR 373.)  Dr. Lawrence also believed that Cahill could perform individual activities such as shopping, could walk a block at a reasonable pace on an uneven surface, could use public transportation, and could prepare simple meals and feed

---

[2]  Cahill maintains that the opinions of Dr. Williams are flawed because he mistakenly believed that Cahill cared for a young child.  (Doc. 11 at 21 n.5.)  This factual error, however, is irrelevant to Dr. Williams's observations regarding Cahill's mental awareness and memory.

herself.  (AR 509.)  Dr. Abramson's physical functional capacity assessment, therefore, was consistent with other record evidence.

Accordingly, the ALJ did not err in affording substantial weight to the opinions of Drs. Farrell and Abramson. [3]

## IV.     Ability to Do Any Other Work

Cahill claims that the ALJ's finding that she could perform other work at step five of the sequential analysis is not supported by substantial evidence.  (Doc. 11 at 25.) Specifically, she argues that the VE's testimony is insufficient because the ALJ did not include the nonexertional limitation "occasional supervised interaction with others" in a hypothetical question to the VE.  (Doc. 11 at 25.)  This claim lacks merit.

The regulations require the ALJ to determine at step five whether the claimant can do "any other work."  20 C.F.R. §§ 404.1520(g), 416.920(g).  "If a claimant has nonexertional limitations that significantly limit the range of work permitted by his exertional limitations, the ALJ is required to consult with a vocational expert."  *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (internal quotation marks omitted).

The ALJ found that Cahill had an RFC to "perform light work . . . allowing for occasional pushing, pulling, and overhead reaching with the right upper extremity; simple

---

[3] Cahill also contends that a non-examining physician's opinion cannot constitute substantial evidence when the consultant failed to examine the entire record.  (*See* Doc. 11 at 22.)  In this case, the non-examining physicians completed their reports on February 18, 2010.  (*See* AR 419.)  Later that year, Cahill had arthroscopic surgery on her right knee to repair a lateral meniscal tear.  (AR 503.)  Treating physician Dr. Lawrence also diagnosed Cahill with lumbago and a depressive disorder in November 2010.  (AR 551.)  The ALJ considered all of this later evidence.  (*See* AR 13.)  Moreover, Plaintiff fails to demonstrate that Drs. Farrell and Abramson's reports were "significantly compromised" by this lack of later information.  *See Pratts v. Chater*, 94 F.3d 34, 38 (2d Cir. 1996) (holding that a non-examining physician's opinion was "significantly compromised" when it was based on an incomplete transcript).

and routine three-step tasks performed for periods up to two hours at a time; and occasional supervised interaction with others." (AR 14.) At step five, the ALJ found that, given this RFC, there were other jobs that existed in significant numbers in the national economy that Cahill could perform, considering her age, education, and work experience. (AR 17.) In making this conclusion, the ALJ relied on the VE's testimony at the administrative hearing. (AR 18.) The VE was asked to assume a hypothetical claimant who "can lift 20 pounds occasionally, 10 pounds frequently, can stand or walk for 6 hours in an 8 hour work day, and sit for 6 hours in an 8 hour world day, can occasionally push and pull with her right upper extremity, and occasionally reach overhead with her right upper extremity." (AR 49.) Additionally, this hypothetical claimant had:

> [T]he mental ability to handle four plus step detailed instructions, and can, can retain the understanding and memory for three step instructions. . . . Can sustain concentration, pace, and persistence for two hours over an eight hour work period and during a work week. Can manage routine social interactions, could have limited contact with the general public, and not have unsupervised contact with vulnerable individuals due to anger management issues. And she can travel, avoid hazards, adapt to change, and set goals.

(AR 51.) The ALJ asked the VE whether there were jobs, other than Cahill's past relevant work, that such a claimant could perform. (*Id.*) The VE stated that, in his expert opinion, there were other jobs that this claimant could perform, including courier, office mail clerk, office helper, and eyeglass assembler. (AR 50, 52.)

Cahill now maintains that the VE's testimony is "fatally deficient" because the ALJ's hypothetical question does not match the RFC verbatim. (Doc. 11 at 25-26.) A

VE's testimony "is only useful if it addresses whether the particular claimant, with h[er] limitations and capabilities, can realistically perform a particular job." *Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981); *see also Bradley v. Bowen*, 800 F.2d 760, 763 n.2 (8th Cir. 1986) (providing that the Eighth Circuit "has repeatedly held that vocational testimony elicited by hypothetical questions that fail to relate with precision the physical and mental impairments of the claimant cannot constitute substantial evidence to support the [Commissioner's] decision.") There is a slight variation between the nonexertional limitation set forth in the hypothetical question and the RFC. The hypothetical included "manage routine social interactions, could have limited contact with the general public, and not have unsupervised contact with vulnerable individuals due to anger management issues" whereas the RFC states "occasional supervised interaction with others." (AR 17, 51.) When comparing this language, it is evident that the limitations contained in the RFC were included in the limitations set forth in the hypothetical question.[4]

As previously discussed, Dr. Farrell opined that Cahill's ability to interact appropriately with the general public was markedly limited. (AR 418.) Dr. Farrell also commented in his functional capacity assessment that Cahill could manage routine social interactions, but that she had social restrictions and that her contact with the general public should be limited. (AR 419.) Finally, he provided that Cahill's anger management issues required intense supervision if she was required to deal with

---

[4] In actuality, the hypothetical question to the VE contained additional nonexertional limitations not included in the RFC. Thus, the VE presumably excluded more jobs under this hypothetical than would have been necessary under the less restrictive RFC.

vulnerable individuals. (*Id.*) These limitations are consistent with Cahill's ability to drive a vehicle and shop by herself, as well as her admitted argument with a patient at work. (AR 33, 201, 410.) Thus, the ALJ's hypothetical question to the VE included limitations that were reflected in and supported by the record evidence. The VE's testimony, therefore, was sufficient because it addressed Cahill's particular limitations. *See Dumas v. Schweiker*, 712 F.2d 1545, 1554 (2d Cir. 1983) (explaining that "*Aubeuf* and other decisions critical of hypotheticals that ask a vocational expert to assume a particular . . . capability on the part of the claimant all address situations where there was no evidence to support the assumption underlying the hypothetical"). Accordingly, the ALJ's finding that Cahill could do other work is supported by substantial evidence and not contrary to law.

In addition, Cahill claims that the ALJ's finding that she could perform past relevant work at step four of the sequential analysis is not supported by substantial evidence. (Doc. 11 at 23.) In support of this claim, Cahill discusses several specific issues, including duration of employment, specific duties associated with certain positions not accounted for in the Dictionary of Occupational Titles, and wages not constituting SGA. (*See id.* at 24-25.) The Court need not address this claim, however, because it finds that the ALJ's alternative finding at step five is supported by substantial evidence and is not contrary to law. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

## Conclusion

For these reasons, the Court DENIES Cahill's motion (Doc.11), GRANTS the Commissioner's motion (Doc. 16), and AFFIRMS the decision of the Commissioner.

Dated at Burlington, in the District of Vermont, this 29th day of August, 2012.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge